# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DONNA WOODS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:20-cv-00655-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**[1]

The plaintiff, Donna Woods, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") beginning May 2, 2006, through February 15, 2016. (Doc. 1).[2] Woods timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

I.     **FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Woods was thirty-seven years old at the time of her alleged disability onset and fifty-seven at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ"). (Tr. at 609, 617, 619). Woods speaks English, has a high school education, and has no past relevant work. (Tr. at 617). Woods previously drew disability benefits from July 1, 1999, through May 1, 2006, due to depression. (*See* Doc. 11 at 1; Tr. 92). Woods filed the instant application on February 22, 2012, alleging a disability onset date of July 1, 1999, due to rheumatoid arthritis, fibromyalgia, head trauma, carpal tunnel syndrome, eczema, high blood pressure, dyslexia, anxiety, depression, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, chronic obstructive pulmonary disease, degenerative disc disease, degenerative joint disease (left knee), Reynaud's Syndrome, ulcerative colitis, migraines, vitamin deficiencies, osteopenia, and herniated disc in lower back. (Tr. at 609). The originally-assigned ALJ denied benefits in 2014 and the district court affirmed. (*See* Doc. 11 at 1; Tr. at 630). On appeal, the appellate court remanded the case to the Commissioner—at the Commissioner's request—for consideration of Woods's submissions to the Appeals Council. (*See* Doc. 11 at 1-2).

On remand, Woods's claim was assigned to a new ALJ. (*See* Doc. 11 at 2). At the hearing on remand, Woods testified she could no longer work due to problems

with her mind and body, as well as memory problems caused by traumatic brain injuries. (Tr. at 638-40). The ALJ issued the decision under review in the instant appeal on July 19, 2019. (Tr. at 605-19). The Appeals Council denied review, and the instant appeal followed. (Tr. at 596). Meanwhile, Woods was subsequently found disabled as of February 16, 2016. (*See* Doc. 11 at 2; Tr. at 630). Accordingly, at issue in the instant appeal is Woods's claim of disability between the 2006 cessation of her previous disability benefits and the subsequent award of benefits in 2016. (*See* Tr. at 630-31).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found Woods met the date last insured ("DLI") requirement of the Social Security Act through December 31, 2009, and had not engaged in SGA from May 2, 2006, through her DLI.  (Tr. at

609).  The ALJ found that beginning May 2, 2006, Woods had the following severe impairments based on the requirements set forth in the regulations: "bipolar disorder; attention deficit hyperactivity disorder; borderline intellectual functioning; chronic obstructive pulmonary disease; degenerative disc disease; degenerative joint disease; and Reynaud's syndrome (20 C.F.R. §§ 404.1520(c), 416.920(c)." (*Id*.). However, the ALJ found Woods did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404. Subp. P, App'x 1 (§§ 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925, 416.926). (Tr. at 611). The ALJ found the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to equal the criteria of any listed impairment and no acceptable medical source concluded Woods's impairments medically equaled a listed impairment. (Tr. at 611). Woods's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 614). The ALJ determined Woods had the following RFC:

> [B]eginning May 2, 2006, through February 15, 2016, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; she should never climb ladders, ropes or scaffolds; she can have only occasional exposure to extremes of cold as well as vibration; she should have no exposure to hazards such as unprotected heights and dangerous machinery; she can occasionally reach overhead with her bilateral

5

upper extremities; she can frequently handle, finger and feel with her bilateral upper extremities; she would be able to understand, remember, and carry out simple instructions and tasks for 2 hour blocks of time; she can tolerate changes in the workplace that are infrequent and gradually introduced; she should not perform any tandem tasks; and she can have occasional work related interaction with supervisors, co-workers or the general public, allowing of course for more frequent contact with her supervisor during the initial train-up or orientation period.

(Tr. at 613).

According to the ALJ, Woods had no past relevant work (20 C.F.R. §§ 404.1565, 416.965) and was considered a "younger individual," being thirty-seven years old on the alleged onset date, but her age category subsequently changed to "closely approaching advanced age" when the ALJ issued her decision. (Tr. at 617). The ALJ also determined "the transferability of job skills [was] not an issue because [Woods did] not have past relevant work (20 C.F.R. §§ 404.1568, 416.968)." (*Id.*). At the hearing, the Vocational Expert ("VE") testified that considering Woods's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a). (*Id.*). The ALJ concluded her findings by stating Woods has not been under a disability, as defined in the Social Security Act, from May 2, 2006, through February 15, 2016 (20 C.F.R. §§ 404.1520(g), 416.920(g)). (Tr. at 618). The Appeals Council denied Woods's request for review. (Tr. at 1-4). Woods timely filed the instant appeal. (Doc. 11).

## II.     STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is

supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

On appeal, Woods contends the ALJ's decision should be reversed and remanded for reasons that fall into two categories: (1) the ALJ erred in giving little weight to the opinions of treating physician Dr. Charles Giddens, consultative physician Dr. Jay Ripka, and consultative psychologist Dr. David Wilson; and (2) the ALJ did not properly consider the evidence submitted to the Appeals Council and her denial was not based on substantial evidence.

### A. Weight to Medical Opinions

The ALJ must articulate the weight given to different medical opinions in the record and her supporting reasons. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things,

upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you"; 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you"; and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a

treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440) (internal quotations omitted). "Good cause" exists for an ALJ to give less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (recognizing that although a claimant's physician may state she is "disabled" or "unable to work," "the

10

agency will nevertheless determine disability based upon the medical findings and other evidence"). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Woods first argues the ALJ erred in giving little weight to the opinion of her treating physician, Dr. Giddens. Specifically, Dr. Giddens opined on a Patient Charity Care Application dated January 29, 2013, that "[p]atient [was] not working and [had] not worked so [he] did not expect her to resume any future work." (Tr. at 451). Woods argues the ALJ erroneously rejected Dr. Giddens's opinion and substituted her own. However, the ALJ explained she afforded "no significant weight" to this opinion because it was merely a factual statement and not based on any assessment of physical limitations that would prevent Woods from working. (Tr. at 616). The statement does not reflect Dr. Giddens's judgment about the nature and severity of Woods's impairments, including her symptoms, diagnosis, or prognosis, or what she could still do despite her impairments and her physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

Even if Dr. Giddens's statement were deemed a medical opinion, the ALJ properly gave this opinion no significant weight and provided substantial evidence for doing so. The ALJ correctly noted Dr. Giddens's opinion was inconsistent with his own treatment notes. (Tr. at 616). On the two occasions Dr. Giddens treated

Woods, he noted no functional limitations and benign findings. (Tr. at 452-53, 456-59). He reported Woods had a normal gait and stance, good exercise habits, and was oriented to time, place, and person. (*Id*.). The ALJ properly gave no significant weight to Dr. Giddens's opinion.

Woods argues Dr. Giddens's opinion is consistent with other medical evidence of record provided by Dr. Richard Meyer, Michelle Stewart, CRLP, and Dr. Paul Megehee. However, her argument fails. The treatment notes from these providers are from 2014, a year after Dr. Giddens treated Woods. The ALJ is not required to give more weight to an opinion based on this subsequent evidence. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.") Dr. Giddens even noted on the Patient Charity Care Application that his opinion was based on the fact Woods was not working at that time and had not been working. (Tr. at 451). *See* 20 C.F.R. 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give to that medical opinion.")

Second, Woods contends the ALJ erred in giving no significant weight to the opinion of consultative physician Dr. Ripka because Dr. Ripka was hired by her counsel.  However, the ALJ explained she gave no significant weight to this opinion for several reasons.  While true that Dr. Ripka was hired by Woods's counsel to conduct the examination, he did not treat her on any other occasion.  The ALJ also noted that although Dr. Ripka's report indicates it is a functional capacities evaluation ("FCE"), there does not appear to have been any testing normally done in an FCE, like lifting or carrying. (Tr. at 615).  *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("We will look at the kinds and extent of examinations and testing the source has performed or ordered…")  In this instance, Dr. Ripka did not order any tests, and the limitations he asserted Woods suffered from were primarily gathered from her own subjective complaints.  (Tr. at 47-48).  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(3); *Crawford*, 363 F.3d at 1159-60; *see also Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (holding substantial evidence supported the ALJ's decision to give less weight to the opinion of treating physician who "relied too significantly on [claimant's] subjective reports").  Further, Dr. Ripka noted Woods suffered from fibromyositis, but there was no examination of tender points to corroborate that diagnosis.  (Tr. at 48).

Third, Woods argues the ALJ erred in giving no significant weight to the opinion of consultative psychologist Dr. Wilson because he was hired by Wood's

counsel. While true that Dr. Wilson was hired by counsel to complete the examination, he did not have a treating relationship with Woods. The ALJ further noted Dr. Wilson was provided with summaries of some of the medical records, but was not provided the actual medical record in its entirety. (Tr. at 50, 615). Since the ALJ did not have access to the medical record summaries provided to Dr. Wilson, she could not say whether the summaries were accurate. Dr. Wilson opined that Woods would miss twenty-five out of thirty days of work due to her psychological symptoms. (Tr. at 56). However, this contradicts Woods's own reports of her daily activities, including personal care, shopping, meal preparation, driving, sewing, managing finances, performing household chores, taking care of her pet dog, and attending church. (Tr. at 611, 367-38, 1430). The ALJ also noted Dr. Wilson's opinion contradicted the weight of the medical evidence of record. (Tr. at 616). Mental status examinations consistently showed Woods had appropriate grooming and attire, conventional behavior, pleasant and cooperative behavior, and independence in daily activities. (Tr. at 484, 488-89, 493, 497, 505, 507, 510, 512, 519-20, 525, 611, 1314, 1429). Woods also exhibited improved and stable mental health after counseling and medication management. (*Id.*).

As shown above, the ALJ articulated reasons for giving no significant weight to the opinions of Drs. Giddens, Ripka, and Wilson, and substantial evidence supports those reasons.

## B.    ALJ's Properly Considered  Evidence Submitted to Appeals Council

With few exceptions, a social security disability claimant is entitled to present new evidence at each stage of the administrative process.  The Social Security Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record.  *Ingram v. Comm'r*, 496 F.3d 1253, 1258 (11th Cir. 2007); *see also* 20 C.F.R. § 416.970(a)(5) (the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision"). The Appeals Council is not required "to provide a detailed discussion of a claimant's new evidence when denying a request for review."  *Mitchell v. Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014).  When reviewing the Commissioner's decision to deny Social Security benefits, "a federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council." *Ingram*, 496 F.3d at 1258.  Specifically, when the Appeals Council denies review of newly submitted evidence, a reviewing court must determine "whether the new evidence renders the denial of benefits," and ultimately the ALJ's decision, erroneous and unsupported by substantial evidence.  *Id.* at 1261-63.

Woods submitted several items of new evidence to the Appeals Council in 2016, including a physical examination completed by Dr. Ripka and a psychological evaluation completed by Dr. Wilson, both completed at her counsel's request in 2014. Woods argues the ALJ ignored this additional evidence; however, as discussed above, the ALJ provided substantial evidence in her opinion to give these opinions no significant weight. Furthermore, these reports were not "material" evidence because there was no reasonable possibility they would change the administrative result because Woods's other medical records, along with her own reported activities, undermine these opinions. (Tr. at 615-16). Evidence is material when, "if accepted, 'there is a reasonable probability' that it 'would change the administrative result.'" *Washington v. Soc. Sec. Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2016) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). Accordingly, there is no evidence in support of Woods's argument that the additional evidence she submitted rendered the ALJ's decision erroneous or that the ALJ ignored this evidence. *See Ingram*, 496 F.3d at 1262.

### IV.  CONCLUSION

Upon review of the administrative record and considering all of Woods's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 30th day of September, 2021.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE